**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                )
ANN JUANITA BRISCOE,             )
                                )
                Plaintiff,       )
                                )
        v.                       )  Civil Action No. 13-1204 (EGS)
                                )
JOHN KERRY, Secretary,           )
Department of State,             )
                                )
                Defendant.       )
_____)

## MEMORANDUM OPINION

Plaintiff Ann Briscoe brings this action against John Kerry, in his capacity as Secretary of State, alleging that she suffered discrimination on the basis of her age, race, and disability, and that she suffered retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, _et seq._; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, _et seq._; and the Rehabilitation Act, 29 U.S.C. § 794, _et seq._ Pending before the Court is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **GRANTS** defendant's motion.

## I.   Background

Ms. Briscoe—an African-American woman who was born in April
1956, Report of EEO Investigation, ECF No. 7-1 at 1—was employed
with the Media Resource Unit of the State Department's Bureau of
Public Affairs. *See* Def.'s Statement of Material Facts ("Def.'s
SMF"), ECF No. 7-8 ¶ 1; Pl.'s Statement of Material Facts
("Pl.'s SMF"), ECF No. 11 at 7 ¶ 1. She has a physical
disability that limits her "ability to reach, stand or push."
Compl., ECF No. 1 at 2. This disability is mentioned in her
State Department personnel file, and has been known to the State
Department since 2001. *See id.*; Def.'s SMF ¶ 8; Pl.'s SMF ¶ 3.

### A.   Ms. Briscoe's Experience in the Rapid Response Unit.

The Media Resource Unit was abolished in 2006, and Ms. Briscoe
was forced to find a job in the newly formed Rapid Response
Unit. *See* Def.'s SMF ¶ 1; Pl.'s SMF ¶ 1. The State Department
"did not offer her assistance walking to Department offices in
search of alternative employment." Def.'s SMF ¶ 8; Pl.'s SMF ¶
3. The Rapid Response Unit was then led by Duncan McAnnis, who
supervised Ms. Briscoe from January 2006 through June 2007. *See*
Def.'s SMF ¶ 4; Pl.'s SMF ¶ 3. Prior to Ms. Briscoe's transfer
to the Rapid Response Unit, Mr. McAnnis said "out with the old
in with the new," a statement that Ms. Briscoe did not hear, but
"another employee told her about the comment." Def.'s SMF ¶¶ 5-
6; Pl.'s SMF ¶ 3. At this time, Mr. McAnnis also hired and

treated more favorably younger employees. *See* Def.'s SMF ¶ 7; Pl.'s SMF ¶ 3.

"[D]uring an unspecified period of time[, Ms. Briscoe] was tasked with helping new staffers sign-in in the building's lobby, located two floors beneath her own office," which was difficult due to her disability. *See* Def.'s SMF ¶ 9; Pl.'s SMF ¶ 3. Ms. Briscoe was also "the only African American in [the Rapid Response Unit] and felt segregated and singled out." Def.'s SMF ¶ 11; Pl.'s SMF ¶ 3. Ms. Briscoe, however, "has not observed any employee at [the Rapid Response Unit] make a derogatory statement about race" or about her disability. Def.'s SMF ¶ 12, 29-30; Pl.'s SMF ¶ 3, 10-11. In 2006 and 2007, Ms. Briscoe received neither a performance rating nor an annual review, making her ineligible for promotion. *See* Def.'s SMF ¶ 13; Pl.'s SMF ¶ 3.

Beginning in September or October 2007, Jennifer Barnes became Ms. Briscoe's supervisor. *See* Def.'s SMF ¶ 4; Pl.'s SMF ¶ 3. Upon Ms. Barnes's arrival, she "met individually with all [Rapid Response Unit] staff except for Plaintiff and inquired as to Plaintiff's status in the [Rapid Response Unit] but not that of other employees." Def.'s SMF ¶ 14; Pl.'s SMF ¶ 3. Ms. Briscoe was also isolated from the staff during their daily morning meetings. *See* Def.'s SMF ¶ 15; Pl.'s SMF ¶ 3. Nonetheless, "[p]laintiff received an outstanding rating for 2008 and an

exceeding expectations rating in 2009." Def.'s SMF ¶ 13; Pl.'s SMF ¶ 3.

## B. Ms. Briscoe Pursues Administrative Proceedings Regarding Her Discrimination Claims.

On February 25, 2009, Ms. Briscoe contacted an EEO Counselor for the first time. *See* Def.'s SMF ¶ 16; Pl.'s SMF ¶ 3; EEO Counselor's Report, ECF No. 7-3 at 1. Her formal discrimination complaint was filed on March 25, 2009. *See* Def.'s SMF ¶ 17; Pl.'s SMF ¶ 4; Formal Complaint of Discrimination, ECF No. 7-2. That complaint alleged discrimination on the basis of race, age, and physical disability, and the creation of a hostile work environment. *Id.* at 2, 3.

Before this complaint was filed, Ms. Briscoe worked the night shift alone; after the complaint was filed, another employee began sharing the shift with her some nights and monitoring her work. *See* Def.'s SMF ¶ 18; Pl.'s SMF ¶ 5. On March 26, 2009, Ms. Barnes informed Ms. Briscoe that she would have her first-ever annual review the following day. *See* Def.'s SMF ¶ 19; Pl.'s SMF ¶ 5. During the review, Ms. Barnes referred repeatedly to Ms. Briscoe's EEO complaint and asked Ms. Briscoe to take on additional tasks. *See* Def.'s SMF ¶ 20; Pl.'s SMF ¶ 5. Following the review, Ms. Barnes "reached to grab hold" of Ms. Briscoe. Def.'s SMF ¶ 21; Pl.'s SMF ¶ 5.

Ms. Briscoe's initial discrimination-related complaint was assigned the administrative case number DOS-F-055-09. *See* Def.'s SMF ¶ 17; Pl.'s SMF ¶ 4. The State Department moved for summary judgment in the case on May 20, 2010. *See* Def.'s SMF ¶ 24; Pl.'s SMF ¶ 7. Ms. Briscoe's case was subsequently assigned to a new Judge in July 2010, and Ms. Briscoe alleges that her opposition to the motion for summary judgment was received. *See* Pl.'s SMF ¶ 8; Notice of Reassignment, Ex. 5B to Opp., ECF No. 11-1 at 31. On December 29, 2010, in part because of a finding that Ms. Briscoe did not file an opposition to the State Department's motion for summary judgment, the motion was granted. *See* Def.'s SMF ¶ 26; Pl.'s SMF ¶ 9; Decision, ECF No. 7-4 at 2-11. That decision did not address any retaliation claim. *See* Decision, ECF No. 7-4 at 2-11. Ms. Briscoe appealed this Order and, on November 14, 2012, the EEOC affirmed, finding, among other things, that even if Ms. Briscoe had filed an opposition to the motion for summary judgment, judgment in favor of the State Department was nonetheless appropriate. *See* EEOC Appeal Decision, ECF No. 7-5; Def.'s SMF ¶ 27; Pl.'s SMF ¶ 10. Ms. Briscoe's motion for reconsideration of that decision was denied on May 8, 2013. *See* Def.'s SMF ¶ 28; Pl.'s SMF ¶ 10. These decisions, too, did not address retaliation.

C.   **Ms. Briscoe Simultaneously Pursues Administrative Proceedings Regarding Her Retaliation Claims.**

On March 30, 2009, Ms. Briscoe filed an addendum to her preexisting EEO complaint, alleging retaliation based upon Ms. Barnes's behavior on March 27, 2009. *See* Def.'s SMF ¶ 22; Pl.'s SMF ¶ 6. A formal complaint was filed the following day. *See* Def.'s SMF ¶ 22; Pl.'s SMF ¶ 6; Formal Retaliation Complaint, Ex. 3 to Pl.'s Opp., ECF No. 11 at 70-71.

On April 8, 2011—after the EEOC had granted the State Department's motion for summary judgment in Ms. Briscoe's discrimination case—Ms. Briscoe received notice that the retaliation claim would proceed under case number DOS-F-047-11. *See* Letter, Ex. 3A to Pl.'s Opp., ECF No. 11 at 73-75; Pl.'s SMF ¶ 6. Ms. Briscoe responded on April 17, 2011 to contest the assignment of a new case number on the ground that the retaliation claim "is included in the current case"—i.e. the case involving her discrimination claims. *See* Letter, Ex. 3B to Pl.'s Opp., ECF No. 11 at 76-77. At that point, however, summary judgment had already been granted to the State Department in that case, in a decision that made no mention of any retaliation claim. *See* Decision, ECF No. 7-4 at 2-11.

Ms. Briscoe's retaliation case was dismissed in a final decision issued on February 9, 2012. *See* Final Decision, ECF No. 7-6. The decision found that she had failed to respond to

requests for interview by the individual investigating her claim and "did not provide testimony and/or otherwise provide any information to the Investigator regarding her allegation." *Id.* at 4. This led to the claim being "dismissed for failure to cooperate." *Id.* Ms. Briscoe was simultaneously informed of her right to appeal to the EEOC within thirty days of receiving the decision. *See id.* at 1. No appeal was filed.

**D.   Procedural History of This Lawsuit.**

Ms. Briscoe filed this action *pro se* on August 5, 2013. *See* Compl., ECF No. 1. She seeks as relief $45,000,000 in damages, and an assurance "that there will be no harm brought to me or further threats against me by the State Department." *Id.* at 7. The State Department subsequently moved to dismiss or, in the alternative, for summary judgment. *See* Mot. to Dismiss or for Summ. J. ("Mot."), ECF No. 7. Ms. Briscoe filed an opposition to that motion. *See* Opp. to Mot. ("Opp."), ECF No. 11. The State Department has filed a reply in further support of its motion. *See* Reply in Supp. of Mot. ("Reply"), ECF No. 14. The motion is ripe for resolution by the Court.

**II.   Standard of Review**

Summary judgment is appropriate when the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. *Id.* at 255.

To survive a motion for summary judgment, however, the requester "must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the nonmoving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). Moreover, "although summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Adair v. Solis*, 742 F. Supp. 2d 40, 50 (D.D.C. 2010) (quotation marks and alterations omitted).[1] "Where, as here, a

---

[1] When a party moves for summary judgment, especially at an early stage of proceedings, Federal Rule of Civil Procedure 56(d) permits the opposing party to "show[] by affidavit or

plaintiff is proceeding *pro se*, 'the Court must take particular care to construe the plaintiff's filings liberally, for such [filings] are held to less stringent standards than formal pleadings drafted by lawyers.'" *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (quoting *Cheeks v. Fort Myer Const. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010)).

## III. Analysis

The State Department argues that it is entitled to judgment on nearly all of Ms. Briscoe's claims due to her failure to exhaust administrative remedies. The State Department also asserts that Ms. Briscoe's claims all fail on the merits. The Court agrees that Ms. Briscoe's disability-discrimination claims, her retaliation claims, and one of her discrete-act race-discrimination claims must be dismissed for failure to exhaust. The Court also finds that the State Department is entitled to judgment on the merits of the remaining claims.

### A.   Applicable Law

1. *Administrative Exhaustion Under Title VII, the ADEA, and the Rehabilitation Act.*

---

declaration that, for specified reasons, it cannot present facts essential to justify its opposition," in which case the Court may deny the motion without prejudice, defer ruling on it, or permit additional time to take discovery.  Ms. Briscoe has not filed such an affidavit or otherwise indicated a desire to conduct further discovery before responding to the defendant's motion for summary judgment. Accordingly, the Court will address the motion as one for summary judgment and consider all of the materials submitted by the parties.

Before bringing any lawsuit under Title VII, the ADEA, or the Rehabilitation Act, an aggrieved party must timely exhaust her administrative remedies. *See, e.g.*, *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012) (Title VII); *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (Rehabilitation Act); *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (ADEA). This is necessary because "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (quotation marks omitted).

Under Title VII and the ADEA, "[a]dministrative exhaustion . . . is an affirmative defense that defendant has the burden to plead and prove." *Carty v. District of Columbia*, 699 F. Supp. 2d 1, 2 (D.D.C. 2010). Under Title VII, a lawsuit must be filed "'[w]ithin 90 days of receipt of notice' of the defendant agency's [Final Agency Decision]." *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007) (quoting 42 U.S.C. § 2000e-16(c)). The ADEA similarly permits a plaintiff to "invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Rann*, 346 F.3d at 195 (citing 29 U.S.C. § 633a(b)-(d)).

The Rehabilitation Act, "limits judicial review to employees 'aggrieved by the final disposition' of their administrative

'complaint.'" *Spinelli*, 446 F.3d at 162 (quoting 29 U.S.C. § 794a(a)(1)). In so doing, the Rehabilitation Act makes "failure to exhaust administrative remedies . . . a jurisdictional defect, requiring dismissal for lack of subject-matter jurisdiction," so "the plaintiff has the burden to plead and prove it." *Ellison v. Napolitano*, 901 F. Supp. 2d 118, 124 (D.D.C. 2012) (quotation marks omitted).

These distinctions aside, "[t]he procedures governing administrative processing of discrimination complaints brought by employees of the federal government under the ADEA, Title VII, and the Rehabilitation Act are set forth in 29 C.F.R. Part 1614." *Id. First*, the employee must initiate contact with an EEO counselor "within forty-five days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). *Second*, if the matter is not resolved informally, the employee may file a formal complaint of discrimination with the agency. *Id.* §§ 1614.105(d), 1614.106(a). *Third*, "[a] complainant who receives an adverse final decision from the agency may appeal that decision to the EEOC within 30 days, or may file a civil action within 90 days." *Ellison*, 901 F. Supp. 2d at 125; 29 C.F.R. § 1614.407. "These deadlines for filing suit on EEO claims are strictly enforced." *Horsey v. Harris*, 953 F. Supp. 2d 203, 210 (D.D.C. 2013). For Title VII and the ADEA, however, "these time limits are subject to equitable tolling, estoppel,

and waiver." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Such doctrines are "not applicable to jurisdictional deadlines such as those imposed by the Rehabilitation Act's exhaustion requirements." *Chavers v. Shinseki*, 667 F. Supp. 2d 116, 128 (D.D.C. 2009).

Administrative remedies must generally be timely exhausted in accordance with these requirements before a case may proceed in federal court. *See, e.g.*, *Bowden*, 106 F.3d at 437. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [applicable] time period after the discrete discriminatory act occurred." *Morgan*, 536 U.S. at 113. "Courts in this district disagree, however, about whether plaintiffs must exhaust allegations of discrimination and retaliation that are related to prior administrative charges." *Hicklin v. McDonald*, No. 14-1569, 2015 WL 3544449, at *2 (D.D.C. June 8, 2015). One side of the debate holds that this is not possible, and that each discrete act must be separately exhausted. *See id.* Another side finds that claims "must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). At a minimum, however, claims

must be administratively exhausted "*unless* they were (1) related
to the claims in the initial administrative complaint, and (2)
specified in that complaint to be of an ongoing and continuous
nature." *Nguyen*, 895 F. Supp. 2d at 184.

2.   *Prima Facie Case Under Title VII and the ADEA.*

Where, as here, a plaintiff offers no direct evidence of
discrimination, "to survive summary judgment and earn the right
to present her case to a jury, she must resort to the burden-
shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S.
792, 802 (1973)." *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C.
Cir. 2006). Under this framework, Ms. Briscoe must show "that:
'(1) [s]he is a member of a protected class; (2) [s]he suffered
an adverse employment action; and (3) the unfavorable action
gives rise to an inference of discrimination.'" *Burley v. Nat'l
Passenger Rail Corp*., 33 F. Supp. 3d 61, 68 (D.D.C. 2014)
(quoting *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)).
An adverse employment action is not limited to "'hirings,
firings, promotions, or other discrete incidents." *Doe v. Gates*,
828 F. Supp. 2d 266, 270 (D.D.C. 2011) (quoting *Holcomb v.
Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)). That said, "'a
plaintiff must show materially adverse consequences affecting
the terms, conditions, or privileges of employment or future
employment such that a trier of fact could find objectively

tangible harm.'" *Id.* (quoting *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 89-90 (D.D.C. 2009)).

**B.   Ms. Briscoe's Age-Discrimination Claims**

Ms. Briscoe's age-discrimination claims relate to two actions of Mr. McAnnis: (1) his statement "out with the old in with the new"; and (2) his hiring of and giving more favorable treatment to younger staffers. *See* Compl., ECF No. 1 at 2.

   1.   *Ms. Briscoe Did Not Exhaust Her Age-Discrimination Claims, But May Obtain Equitable Tolling.*

Administrative documents make clear that both actions occurred in the process of the reorganization of the Media Resource Unit and the creation of the Rapid Response Unit in 2005 and 2006. *See* Formal Complaint of Discrimination, ECF No. 7-2 at 4. It is undisputed, however, that Ms. Briscoe first contacted her EEO counselor on February 25, 2009. *See* Def.'s SMF ¶ 16; Pl.'s SMF ¶ 3; EEO Counselor's Report, ECF No. 7-3 at 1. Accordingly, any discrete acts of discrimination arising in 2005 or 2006 occurred far more than forty-five days earlier than this date and were not timely exhausted.

Ms. Briscoe appeared to plead in her opposition brief an argument that may support equitable tolling of this requirement. "[W]ith respect to ADEA claims, this Circuit has noted that 'the timeliness and exhaustion requirements of [the ADEA] are subject to equitable defenses and are in that sense non-

jurisdictional.'" *Williams-Jones v. LaHood*, 656 F. Supp. 2d 63, 66 (D.D.C. 2009) (quoting *Rann*, 346 F.3d at 194-95) (alteration in original). EEOC regulations permit such tolling "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(2). Ms. Briscoe cited this legal provision and appeared to argue that she "had no knowledge of the time limits" under the ADEA. Opp. at 12 (citing Summary of Meeting with EEO Counselor, Ex. 2A to Opp., ECF No. 11 at 40). Because administrative exhaustion under the ADEA is the defendant's burden to plead and prove, *Carty*, 699 F. Supp. 2d at 2, this argument is sufficient to raise the issue. On the current record, moreover, the Court finds that there is a dispute of fact as to whether Ms. Briscoe knew of the deadline, so the Court finds that a genuine dispute of fact exists on this point. *See Harris v. Gonzales*, 488 F.3d 442, 444-46 (D.C. Cir. 2007).

> 2. *Ms. Briscoe Has Failed to State a Prima Facie Case for Discrimination Under the ADEA.*

In any event, Ms. Briscoe's age-discrimination claims must be dismissed because she has failed to make out a prima facie case. It is undisputed that she falls within the ADEA's protected class of individuals over forty years of age. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000); Report of EEO Investigation, ECF No. 7-1 at 1. Ms. Briscoe, however, does

not allege any adverse employment action in connection with
these claims. Mr. McAnnis alleged statement "out with the old in
with the new"—even assuming that it is not two layers of
hearsay—is unconnected to any adverse action taken against Ms.
Briscoe. Her allegation that Mr. McAnnis hired and treated more
favorably younger staffers is far too vague to support an
inference that *Ms. Briscoe* suffered any adverse employment
action by Mr. McAnnis at this time—Ms. Briscoe, after all, was
also hired into the Rapid Response Unit. Ms. Briscoe must
instead show that Mr. McAnnis caused "materially adverse
consequences affecting the terms, conditions, or privileges of
employment or future employment such that a trier of fact could
find objectively tangible harm." *Gates*, 828 F. Supp. 2d at 270.
The record contains nothing to explain how the alleged favorable
treatment of younger individuals impacted Ms. Briscoe, so
judgment must be granted to the defendant on Ms. Briscoe's age-
discrimination claims.[2]

---

[2] To the extent that Ms. Briscoe seeks to bring a claim for age-
related hostile work environment, such a claim fails because the
statement by Mr. McAnnis and the vague allegation that he hired
and treated favorably younger individuals do not nearly
establish that "the workplace is permeated with discriminatory
intimidation, ridicule and insult that is sufficiently severe
and pervasive to alter the conditions of [her] employment and
create an abusive working environment." *Outlaw v. Johnson*, 49 F.
Supp. 3d 88, 91 (D.D.C. 2014) (quoting *Harris v. Forklift Sys.,
Inc.*, 510 U.S. 17, 21 (1993)).

C.   **Ms. Briscoe's Disability-Discrimination Claims**

Ms. Briscoe's claims regarding disability discrimination relate to the following actions: (1) the abolition of her job, after which she "was ordered to find my own job in six weeks which involved walking the lengthy halls which included going to other Annex buildings"; and (2) being "asked over a period of time to go to [a] lobby located two flights down and sign in new staffers who did not have a security clearance." Compl., ECF No. 1 at 2. The abolition of her job relates to the time period in 2005 and 2006 when the Media Resource Unit was disbanded. *See* Formal Complaint of Discrimination, ECF No. 7-2 at 4. Ms. Briscoe has provided no indication of when the second event took place.

Again, it is undisputed that Ms. Briscoe first contacted her EEO counselor on February 25, 2009. *See* Def.'s SMF ¶ 16; Pl.'s SMF ¶ 3; EEO Counselor's Report, ECF No. 7-3 at 1. Accordingly, the 2005 and 2006 time period when she was allegedly forced to walk the hallways of the State Department to secure a new position is well outside the counseling timeframe. As for the requirement that Ms. Briscoe walk down two flights of stairs to sign in other staffers, the record contains no information from which the Court could determine whether those discrete acts were timely raised in counseling. For that reason, and because the plaintiff bears the burden of pleading and proving

jurisdictional exhaustion under the Rehabilitation Act, *Ellison*, 901 F. Supp. 2d at 124, this event was not properly exhausted. Nor could Ms. Briscoe avail herself of any equitable tolling under the exhaustion requirements applicable to claims under the Rehabilitation Act, for such a doctrine is "not applicable to jurisdictional deadlines such as those imposed by the Rehabilitation Act's exhaustion requirements." *Chavers*, 667 F. Supp. 2d at 128.[3] Accordingly, judgment must be granted to the defendant on Ms. Briscoe's disability-discrimination claims.

### D.   Ms. Briscoe's Race-Discrimination Claims

Ms. Briscoe's claims regarding race discrimination relate to a handful of events, as best the Court can discern: (1) while Mr. McAnnis was still Ms. Briscoe's supervisor, he failed to provide her a review or performance rating for two years, thereby preventing her from being promoted; (2) Ms. Briscoe was the only African-American in the Rapid Response Unit and felt singled out and segregated; (3) Ms. Barnes questioned other employees about

---

[3] For the same reasons, to the extent that Ms. Briscoe sought to raise a hostile-work-environment claim under the Rehabilitation Act, judgment must be granted to the defendant because Ms. Briscoe has failed to allege any act that occurred within the forty-five-day window and, therefore, no hostile-work-environment claim has been properly exhausted. *See Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Ms. Briscoe's duties in the Rapid Response Unit, but did not do so regarding the duties of other employees; (4) Ms. Barnes met individually with other employees but not with Ms. Briscoe; and (5) Ms. Barnes made Ms. Briscoe sit away from other staff during morning meetings. *See* Compl., ECF No. 1 at 2–3.[4]

    1.   *The 2006–2007 Events Were Not Properly Exhausted.*

Ms. Briscoe's first allegation—that Mr. McAnnis failed to provide her a performance review for two years—relates to events in 2006 and 2007. As the Court has noted, Ms. Briscoe's administrative contact began on February 25, 2009. *See* Def.'s SMF ¶ 16; Pl.'s SMF ¶ 3; EEO Counselor's Report, ECF No. 7-3 at 1. Because this far exceeds the forty-five-day counseling period, Ms. Briscoe did not properly exhaust this claim. Nor did she appear to argue that equitable tolling should apply. Accordingly, judgment is granted for the defendant on this portion of the claim.[5]

---

[4] In her opposition brief, Ms. Briscoe appeared to add an additional race-discrimination allegation: That the Media Resource Unit was abolished for discriminatory reasons. *See* Opp. at 14. To the extent Ms. Briscoe sought to bring this as a discrete-act claim for race discrimination, it was not properly exhausted for the same reasons discussed in Part III.D.1. Nor did Ms. Briscoe provide the Court with any evidence from which a jury could infer that the Media Resource Unit was abolished for discriminatory reasons.

[5] Even if the deadlines could be tolled regarding this action, Ms. Briscoe failed to provide any evidence from which a jury could infer that the failure to provide a review was connected to race. *See Burkes v. Holder*, 953 F. Supp. 2d 167, 173 (D.D.C.

2.   *Ms. Briscoe Failed to Make Out a Prima Facie Case of Race Discrimination.*

The remainder of Ms. Briscoe's race-discrimination claim cannot survive because she failed to plead or provide evidence of having suffered *any* adverse employment action in connection with these events. "When asserting a race discrimination claim under Title VII, the plaintiff must allege two essential elements: 1) that the plaintiff suffered an adverse employment action, and 2) that the adverse employment action was the result of plaintiff's race." *Burkes*, 953 F. Supp. 2d at 973 (citing *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008)). Ms. Briscoe cannot satisfy the first element because the events she alleges, at most, relate to the general working environment, not any "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003). Even recognizing that an adverse employment action need not be as formal as termination or demotion, none of the events described by Ms. Briscoe relate to "materially adverse consequences affecting the terms, conditions, or privileges of

---

2013) (plaintiff must supply evidence "that the adverse employment action was the result of plaintiff's race"). Indeed, Ms. Briscoe conceded that she "has not observed any employee at [the Rapid Response Unit] make a derogatory statement about race." Def.'s SMF ¶ 12; Pl.'s SMF ¶ 3.

employment or future employment such that a trier of fact could find objectively tangible harm." *Gates*, 828 F. Supp. 2d at 270. Accordingly, judgment must be granted to the State Department on Ms. Briscoe's race discrimination claim.[6]

### E.   Ms. Briscoe's Retaliation Claims

Ms. Briscoe's retaliation claims relate to events that occurred in the immediate aftermath of her filing of an EEO complaint alleging discrimination in March 2009. The allegations are as follows: First, after the EEO complaint was filed, another employee was assigned to work the night shift along with Ms. Briscoe and that employee appeared to be monitoring her. *See* Def.'s SMF ¶ 18; Pl.'s SMF ¶ 5. Second, during a March 27, 2009 meeting with Ms. Barnes, Ms. Barnes allegedly held an unexpected annual review, referred repeatedly to Ms. Briscoe's EEO complaint, asked Ms. Briscoe to take on additional tasks, and

---

[6] Assuming, for argument's sake, that Ms. Briscoe properly exhausted her administrative remedies such that she may stitch together all of these different events in an effort to make out a claim for race-based hostile work environment, such a claim must fail because her allegations are not sufficient for a jury to find that "'the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Outlaw*, 49 F. Supp. 3d at 91 (quoting *Harris*, 510 U.S. at 21). Indeed, Ms. Briscoe admitted that she "has not observed any employee at [the Rapid Response Unit] make a derogatory statement about race." Def.'s SMF ¶ 12; Pl.'s SMF ¶ 3.

"reached to grab hold" of Ms. Briscoe in a manner that frightened her. *See* Def.'s SMF ¶¶ 19-21; Pl.'s SMF ¶ 5.

Unlike for many of her discrimination claims, Ms. Briscoe timely contacted an EEO counselor regarding these incidents. *See* Formal Retaliation Complaint, Ex. 3 to Pl.'s Opp., ECF No. 11 at 70-71; Def.'s SMF ¶ 22; Pl.'s SMF ¶ 6. The problem arose, for administrative exhaustion purposes, after she received the final agency decision in her retaliation case, which was issued on February 9, 2012. *See* Final Decision, ECF No. 7-6. Upon receipt of that decision, Ms. Briscoe had ninety days to file a civil action. *See* 29 C.F.R. § 1614.407(a). This deadline is "strictly enforced" and "[c]ourts . . . will dismiss a suit for missing the deadline by even one day," including in situations in which a litigant is proceeding *pro se. Horsey*, 953 F. Supp. 2d at 210. Courts also presume that a final decision which was mailed to an individual was "received . . . within five days from the date[ it was] mailed." *Id.* Ms. Briscoe, however, did not file suit until August 8, 2013—approximately eighteen months after the decision had issued.

Nor can Ms. Briscoe's retaliation claims—which were subject to a separate administrative process-be piggybacked onto the timely filed civil action contesting the administrative decision on her discrimination claims. For one, allowing such a circumventing of administrative deadlines where the retaliation claims were

actually brought in a separate administrative process would undermine the purposes of those deadlines. Even if the retaliation claims had never been brought in any administrative proceeding, it is not clear in this District that such an unexhausted claim could ever be piggybacked onto a properly exhausted one to which it was "related." *Hicklin*, 2015 WL 3544449, at *2. Assuming, *arguendo*, that such a doctrine is viable, Ms. Briscoe's retaliation claims are not sufficiently related to her earlier discrimination claims. That doctrine requires that claims of each retaliatory act be administratively exhausted "*unless* they were (1) related to the claims in the initial administrative complaint, and (2) specified in that complaint to be of an ongoing and continuous nature." *Nguyen*, 895 F. Supp. 2d at 184. Courts have rejected attempts to use this doctrine to add allegations of subsequent retaliation to EEO complaints that raised only discrimination. *See, e.g.*, *Hicklin*, 2015 WL 3544449, at *4 ("[C]laims of the ideologically distinct categories of discrimination and retaliation are not related simply because they arise out of the same incident.") (quotation marks and alterations omitted); *Scott v. Dist. Hosp. Partners,* LP, 60 F. Supp. 3d 156, 162–63 (D.D.C. 2014) (declining to find relatedness where initial charge did not mention disability-discrimination and retaliation theories); *Marcelus v. Corrections Corp. of Am.*, 540 F. Supp. 2d 231, 234

(D.D.C. 2008) (finding, where "[t]he only theories mentioned in [the plaintiff's] EEOC Charge . . . were age and national origin," that "[a]bsent an indication of this theory, plaintiff's retaliation claim here is not like or reasonably related to the allegations in his EEOC Charge") (quotation marks omitted). Accordingly, Ms. Briscoe's retaliation claims were not properly exhausted, so judgment must be entered in favor of the defendant.

### F.   Ms. Briscoe's Claims Regarding the Administrative Process.

In her opposition brief, Ms. Briscoe appeared to raise various claims regarding deficiencies in the administrative processing of her various claims. *See* Opp. at 3-5. To the extent that these claims sought to raise separate allegations of retaliation—that is, that the defendant retaliated against her for filing EEO complaints by delaying and undermining the investigation of her complaint—such claims have been found to be improper. *See, e.g.*, *Diggs v. Potter*, 700 F. Supp. 2d 20, 46 (D.D.C. 2010) ("[T]here is no cause of action for federal employees to bring retaliation or discrimination claims based on complaints of delay or interference in the investigative process.") (quotation marks omitted). To the extent that she seeks to raise an independent claim regarding this administrative processing, the D.C. Circuit has held "that Congress has not authorized, either expressly or

impliedly, a cause of action against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an employment discrimination charge." *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997); *see also Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) (same for claim against federal-agency employer regarding administrative processing of an EEO complaint). Accordingly, any independent legal claim regarding the administrative process would be improper and judgment is granted to the defendant on any such claim.

## IV.  Conclusion

   For the foregoing reasons, the Court addresses defendant's motion as one for summary judgment and **GRANTS** that motion. An appropriate Order accompanies this Memorandum Opinion.


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **July 2, 2015**